UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PHILIP LANGAN,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED SERVICES AUTOMOBILE<br>ASSOCIATION, et al.,<br><br>        Defendants. | Case No.  13-cv-04994-JST<br><br>**ORDER RE: MOTIONS TO DISMISS,<br>MOTION TO COMPEL<br>ARBITRATION, AND MOTION TO<br>STRIKE**<br><br>Re: ECF Nos. 75, 76, 77, 79 |

Four motions are pending in this proposed class action for claims arising out Plaintiff Langan's credit transactions. First, Defendants United States Automobile Association ("USAA") and United Services Automobile Association Federal Savings Bank ("USAA FSB") (collectively "the USAA Defendants") move under Rule 12(b)(6) to dismiss the claims that Plaintiff Langan has asserted against them. Second, Defendants J.P. Morgan Chase National Corporate Services and JPMorgan Chase Bank (collectively "the Chase Defendants") move under Rule 12(b)(6) to dismiss the claims that Langan has asserted against them. Third, Defendant Verizon moves to compel arbitration as to the claims that Langan has asserted against it. Finally, the Chase Defendants move to strike the class allegations in the complaint. Langan has not opposed any of these motions. For the reasons set forth below, the USAA Defendants' motion is GRANTED IN PART and DENIED IN PART; the Chase Defendants' motions are GRANTED; and Verizon's motion is DENIED AS MOOT.

I.      BACKGROUND

    A.      The Parties and Claims

        Plaintiff Langan, a disabled veteran who is representing himself, brings this action on his own behalf and on behalf of a class of "disabled U.S. veteran credit consumers" for claims arising

out of several credit transactions.  Am. Compl., ECF No. 63.  The Defendants named in the complaint are the USAA Defendants; the Chase Defendants; Experian Data Corp., Experian Information Solutions, and Experian Services Corp. (collectively "the Experian Defendants"); Gulf Credit Services; and Verizon Cellco Partnership d/b/a Verizon Wireless ("Verizon").

The gravamen of the complaint appears to be that (1) the Chase Defendants wrongfully filed a 1099-C form with the IRS after they removed some debts from Langan's credit report; (2) the USAA Defendants wrongfully charged him excessive fees and provided inaccurate information to credit reporting agencies, which then reported that inaccurate information on Langan's credit report without first conducting a reasonable investigation; (3) Defendant Gulf Credit Services unlawfully attempted to collect a disputed debt; and (4) Verizon breached a contract with Langan by charging him for phone services that should have been free under his contract.

Langan asserts the following claims in the operative complaint: (1) negligence against the Chase Defendants; (2) breach of contract against Verizon; (3) "breach" of the Credit Card Act, 15 U.S.C. §§ 1665d and 1637, against the USAA Defendants; (4) "breach" of California's Song-Beverly Credit Card Act against the USAA Defendants; (5) breach of contract against the USAA Defendants, the Experian Defendants, and Gulf Credit Services; (6) "breach" of California Civil Code § 1671 against the USAA Defendants, the Experian Defendants, Gulf Credit Services, and Verizon; (7) "breach" of California's Rosenthal Fair Debt Collection Practices Act against all Defendants; (8) "breach" of the Fair Credit Reporting Act against all Defendants; (9) "breach" of the California Consumer Credit Reporting Agencies Act against all Defendants; (10) breach of the covenant of good faith and fair dealing against all Defendants; (11) "breach" of California's Unfair Competition Law against all Defendants; (12) "breach" of California's Fair Advertising Law against all Defendants; (13) intentional misrepresentation against all Defendants; (14) negligent misrepresentation against all Defendants; (15) defamation against all Defendants; and (16) intentional infliction of emotional distress against all Defendants.

United States District Court
Northern District of California

### B.  Allegations Pertaining to the Moving Defendants

#### 1.  The USAA Defendants

Langan alleges that the USAA Defendants are credit card issuers and debt collectors, that they issued him three separate credit accounts, and that they charged excessive fees in July 2011 in connection with those accounts.  Am. Compl. ¶¶ 8, 56.[1]  He further avers that he contacted these Defendants multiple times to try to resolve these charges and to validate the debts he owed on the accounts but that Defendants ignored him.  Id. ¶ 56.  Langan allegedly made some payments on the accounts in November 2011, but "Defendants refused to remove the negative credit information on [his] credit report."  Id.

#### 2.  The Chase Defendants

Langan alleges that the Chase Defendants "claimed" that he "had a debt" with them in 2003, that he disputed this debt, and that Chase removed the debt from Langan's credit report in 2005.  Id. ¶¶ 1, 9.  Langan further avers that Chase filed a 1099-C for $2,756.36 with the IRS in 2011, which caused harm to his "reputation with the IRS."  Id.

#### 3.  Verizon

Langan allege that he and Verizon entered into a contract whereby Verizon would provide him with "unlimited data" on his cell phone, and that Verizon breached that contract when it charged him for phone services that should have been included in the "unlimited data" plan.  Id. ¶¶ 46-48.

### C.  Procedural History

This action was removed from Contra Costa County Superior Court on the basis of federal question jurisdiction.  ECF No. 1.  The court granted Langan's request to proceed in forma pauperis and to have access to electronic case filing.  ECF Nos. 39, 40.  Langan filed an amended complaint on January 31, 2014, with the court's leave.  ECF No. 63.

### D.  Jurisdiction

The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

---

[1] Langan numbered some, but not all, of the paragraphs in his complaint.

United States District Court
Northern District of California

## II.     CLAIMS AGAINST VERIZON

As a threshold matter, the court notes that the moving Defendants argue that Langan's claims do not appear to arise out of the same transaction or occurrence and that his joinder of these claims in the operative complaint is therefore improper.

These arguments are meritorious only with respect to the claims Langan asserts against Verizon. All of these claims arise out of state law. As such, the court can exercise jurisdiction over them only if the claims satisfy the requirements of 28 U.S.C. § 1367(a).[2] That section provides that in any civil action of which the district court has original jurisdiction, the court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are "so related" when the following two factors are satisfied: "(1) the jurisdiction-invoking claim and the supplemental claim [have] a 'common nucleus of operative fact' and (2) there [is] an expectation that the two claims would be tried in the same proceeding." 13D Charles Alan Wright, Arthur R. Miller & Mary K. Kay, Fed. Prac. & Proc. Juris. § 3567.1 (3d ed. 2005).

The claims that Langan has asserted against Verizon do not arise out of the common nucleus of operative fact as the federal claims that give this court original jurisdiction. Langan's federal claims are based on allegations that the non-Verizon Defendants overcharged Langan in connection with certain credit accounts, unlawfully attempted to collect debts incurred in connection with these accounts, unlawfully reported inaccurate information to credit reporting agencies, and failed to correct the resulting errors in Langan's credit reports.

On the other hand, the allegations pertaining to Verizon are based on the theory that Verizon entered into a contract to provide Langan with "unlimited data" on his cell phone but breached that contract when it charged him for phone services that should have been included in the "unlimited data" plan. See Am. Compl. ¶¶ 46-48. The phone contract between Verizon and

---

[2] A district court has the authority to "raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002).

4

United States District Court
Northern District of California

Langan, which is not a credit-based contract, has no apparent connection to the credit accounts that form the basis of the federal claims.  Because the claims asserted against Verizon are not "so related" to the other claims in the complaint, they do not satisfy the requirements of § 1367(a) and therefore must be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.[3]  In light of this dismissal, Verizon's motion to compel arbitration is DENIED AS MOOT.

## III.   MOTIONS TO DISMISS

### A.   Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  When dismissing a complaint, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).  The district court, however, has "broad" discretion to deny leave to amend "where plaintiff has previously amended the complaint." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

### B.   Analysis

#### 1.   TILA

Langan alleges that the USAA Defendants violated 15 U.S.C. §§ 1665d and 1637 by "billing excessive and unreasonable fees and interest rates" and by failing to specify in each account statement the number of months required to pay off the balance if only minimum payments were made in connection with the following accounts: "USAA", "Discover,"

---

[3] References to "all Defendants" from this point forward pertain to all Defendants named in the operative complaint except for Verizon.

United States District Court
Northern District of California

1    "WAL-MART/GE Capital," and "PayPal/GE Capital."  Am. Comp. ¶¶ 56, 60.

2         The USAA Defendants move to dismiss these claims on the ground that the § 1637 claim

3    is time-barred and that Langan fails to allege sufficient facts to state a claim under §§ 1665d and

4    1637.

5         Both §§ 1665d and 1637 are a part of the Truth in Lending Act ("TILA"), which is

6    codified at 15 U.S.C. § 1601 et seq.  TILA is designed "to assure a meaningful disclosure of credit

7    terms so that the consumer will be able to compare more readily the various credit terms available

8    to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  TILA "regulates credit card

9    disclosures at numerous points in the commercial arrangement between creditor and consumer: at

10   the point of solicitation and application, at the point the consumer and the creditor consummate

11   the deal, at each billing cycle, and at the point the parties renew their arrangement."  Barrer v.

12   Chase Bank USA, N.A., 566 F.3d 883, 887 (9th Cir. 2009) (citing 15 U.S.C. § 1637(a)-(d)).

### a.    15 U.S.C. § 1665d

14        Section 1665d requires that:

> The amount of any penalty fee or charge that a card issuer may
> impose with respect to a credit card account under an open end
> consumer credit plan in connection with any omission with respect
> to, or violation of, the cardholder agreement, including any late
> payment fee, over-the-limit fee, or any other penalty fee or charge,
> shall be reasonable and proportional to such omission or violation.

19   15 U.S.C. § 1665d(a).  A fee is reasonable and proportional if (1) it represents a reasonable

20   proportion of the total costs incurred by the card issuer as a result of that type of violation, and (2)

21   it does not exceed $25 for an initial violation of the terms of the card agreement, $35 if the card

22   issuer previously imposed a fee for a violation of the same type during the same billing cycle or

23   the next six billing cycles, or 3% of the outstanding balance on an account that requires payment

24   of the full balance at the end of each billing cycle.  See 12 C.F.R. § 226.52(b); see also 15 U.S.C.

25   § 1665d(a).

26        This claim is subject to dismissal because the operative complaint fails to raise the

27   reasonable inference that the fees that the USAA Defendants purportedly charged Langan fall

28

United States District Court
Northern District of California

within the scope of § 1665d.  A credit issuer's duties under § 1665d are triggered only when there has been an "omission with respect to, or violation of, the cardholder agreement."  15 U.S.C. § 1665d(a).  Though Langan alleges conclusorily that the USAA Defendants charged him "excessive" fees, see, e.g., Am. Comp. at 22, Langan fails to identify the date or amount of any fee, or the card issuer's stated grounds for imposing the fee.  Specifically, Langan fails to allege that the fees were the result of a failure on his part to comply with the terms of the card agreements.  Without specific factual allegations pertaining to the circumstances that gave rise to the fees at issue, the operative complaint does not plausibly allege that USAA Defendants violated § 1665d.  Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND.

### b.     15 U.S.C. § 1637

Section 1637 requires a creditor of any account under an open end consumer credit plan to provide to the obligor, among other things, "the number of months (rounded to the nearest month) that it would take to pay the entire amount of that balance, if the consumer pays only the required minimum monthly payments and if no further advances are made."  15 U.S.C. § 1637(b)(11)(B)(i).  This obligation applies to "each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed."  15 U.S.C. § 1637(b).  A civil action for a violation of § 1637(b) "may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation[.]"  15 U.S.C. § 1640(e).

The USAA Defendants move to dismiss this claim on the ground that it is time-barred.  These Defendants point to one of the documents that Langan attached to the operative complaint, which they claim shows that Langan's USAA Mastercard account was closed on June 6, 2012.  Am. Compl., Ex. E at 6.  Defendants contend that, in light of this document, any violation of § 1637(b) should have occurred no later than June 6, 2012, and for that reason, the statute of limitations of a claim for that violation would have expired by June 6, 2013.  These Defendants note that Langan did not file this action until October 22, 2013.  ECF No. 1, Ex. 3.

A review of Exhibit E, which is a letter from the office of the CEO of USAA to Langan,

shows that the Mastercard account was closed in 2011, and not on January 6, 2012, as Defendants contend.  Am. Compl., Ex. E at 6.[4]  The date of January 6, 2012, refers to the date when the letter was sent.  The letter also states that "[p]er your request, the card has been reopened and currently reflects a zero balance."  Id.  Because this letter does not establish that any of the USAA accounts were, in fact, closed, this letter is insufficient to show that any of Langan's claims under § 1637 are time-barred.

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'"  U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir.2010)).  Because it is unclear from the complaint when Langan received the statements that allegedly failed to contain the information required by § 1637, USAA's motion to dismiss Langan's § 1637 claim is DENIED.

### 2.   FCRA

Langan alleges that the USAA Defendants, the Chase Defendants, the Experian Defendants, and Gulf Credit Services violated the Fair Credit Reporting Act ("FCRA") by failing to provide him with written notice of their provision of "negative information" to "CRAs" and by failing to conduct a reasonable investigation after he disputed his debts.  Am. Compl. ¶¶ 107-112.

The USAA Defendants move to dismiss this claim on the ground that no private cause of action exists for violations of § 1681i(a), and because Langan has not alleged facts showing that they had any duties under § 1681s2(b).  The Chase Defendants also move to dismiss this claim on the ground that Langan has not alleged facts showing that they misreported any information to a CRA.

"Congress enacted the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681x, in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and

---

[4] The court may take judicial notice of documents attached to a complaint whose authenticity is not questioned.  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.1994).

United States District Court
Northern District of California

protect consumer privacy.  As an important means to this end, the Act sought to make consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.  In addition, to ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs, called "furnishers" in the statute."  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (footnote, internal citations and quotation marks omitted).

Because Langan appears to predicate this claim on violations of § 1681i(a), § 1681s-2(a), and § 1681s2(b), the court addresses the merits of each in turn.[5]

### a.    15 U.S.C. § 1681i(a)

Section 1681i(a) provides, in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate* and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

This section, by its express terms, limits the duty to conduct a reasonable investigation to consumer reporting agencies. A "consumer reporting agency" is defined as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

---

[5] Langan also mentions 15 U.S.C. § 1681n in the complaint, but that provision merely itemizes the damages and fees that a plaintiff may recover under the FCRA.

United States District Court
Northern District of California

15 U.S.C. § 1681a(f).

This claim fails as to the USAA and Chase Defendants, as there are no allegations in the operative complaint showing that they are CRAs.  Langan alleges that the USAA Defendants issued to him several credit accounts and that the Chase Defendants held "debt" associated with Langan.  Am. Compl. ¶¶ 8-10.  These activities do not involve the assembly or evaluation of consumer credit information for the purpose of furnishing consumer reports to third parties.  As such, Langan's allegations do not raise the reasonable inference that these Defendants are CRAs.  See 15 U.S.C. § 1681a(f).   Because amendment of these claims would be futile, the claims against these Defendants are DISMISSED WITH PREJUDICE.

### b.      15 U.S.C. § 1681s-2(a)

In addition to imposing duties on CRAs, the FCRA also imposes certain duties on "furnishers," which are entities that provide credit information to consumer reporting agencies in the ordinary course of business.  Gorman, 584 F.3d at 1153–54.  One such duty is to provide notice in writing to the consumer of the furnisher's provision to a consumer reporting agency of negative information regarding that consumer.  15 U.S.C. § 1681s-2(a)(7).  This duty cannot be enforced by a consumer, however.  Indeed, "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies."  Gorman, 584 F.3d at 1154.

Because there is no private right of action for the failure to notify a consumer of the provision of negative information to a customer reporting agency under 15 U.S.C. § 1681s-2(a)(7), Langan's claims under this statute are DISMISSED WITH PREJUDICE as to the USAA and Chase Defendants.

### c.      15 U.S.C. § 1681s-2(b)

Another duty that the FCRA imposes on furnishers is "triggered" when "a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information."  Gorman, 584 F.3d at 1154.  Upon receiving such a notice, the furnisher is required to conduct an investigation with respect to the disputed information and to take steps to ensure that any errors are corrected.  See 15 U.S.C. § 1681s–2(b). This duty arises "only after the furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the consumer

1  does not trigger furnishers' duties under subsection (b)."  Id. (citation omitted).

2         Here, the complaint is devoid of any allegations showing that a CRA, as opposed to

3  Langan himself, provided notice to the USAA and Chase Defendants of a dispute.  Instead,

4  Langan's FCRA claim is based on the notion that *he himself* provided notice to all Defendants of

5  the disputed debts.  See Am. Comp.. ¶ 111 ("Plaintiff requested a copy of his credit report,

6  received said reports, disputed/notified Defendants of said debt dispute.").   Because a notice of a

7  dispute received from a consumer such as Langan triggers no duties under §1681s-2(b), this claim

8  is DISMISSED WITH PREJUDICE as to the USAA and Chase Defendants.

9                    **3.      Song-Beverly Credit Card Act**

10        Langan alleges that the USAA Defendants violated California's Song-Beverly Credit Card

11 Act ("SBCCA") by failing to correct billing errors on his credit report even though he sent letters

12 to these Defendants to alert them of the error.  Am. Compl. ¶¶ 66-69.

13        The SBCCA is "designed to promote consumer protection."  Florez v. Linens 'N Things,

14 Inc., 108 Cal. App. 4th 447, 450 (2003).  Section 1747.50 of the Act imposes a duty on credit card

15 issuers to correct billing errors made by the card issuer within two complete billing cycles, but in

16 no event later than 90 days, after receiving an inquiry.  Cal. Civ. Code § 1747.50.

17        The USAA Defendants move to dismiss this claim on the ground that Langan has not

18 identified a billing error in the operative complaint.

19        The motion is well-taken.  A "billing error" is defined as an error by omission or

20 commission in (1) posting any debit or credit, or (2) in computation or similar error of an

21 accounting nature contained in a statement given to the cardholder by the card issuer.  Cal. Civ.

22 Code § 1747.02(j).  Although Langan uses the word "error" in his complaint, he does not identify

23 any specific bill from USAA, much less any error on such a bill.  This claim is DISMISSED

24 WITH LEAVE TO AMEND.

25                    **4.      Breach of Contract**

26        Langan alleges that the USAA Defendants, the Experian Defendants, and Gulf Credit

27 Services "entered into written contracts" with him "wherein Defendants promised to provide

28

United States District Court
Northern District of California

credit/debt to Plaintiffs and the class in exchange for Plaintiffs and the class paying Defendants a monthly fee . . . Defendants breached the contracts by charging higher monthly fees than set forth in the contract and not providing services for which Plaintiffs and the class were paying fees." Am. Compl. ¶ 78.  Langan further avers that he suffered "economic losses and other general and specific damages" as a result of the alleged breach.  Id. ¶ 79.

The USAA Defendants move to dismiss this claim on the ground that Langan fails to allege sufficient facts to show that a contract existed or that USAA Defendants breached that contract.  Specifically, these Defendants contend that Langan's failure to attach copies of the contracts at issue or to specify the exact terms of the contracts renders the claim subject to dismissal.

The elements of a claim for breach of contract are: "the existence of the contract, performance by or excuse for nonperformance by the plaintiff, breach by the defendant, and damages."  First Comm'l Mortg. Co. v. Reece, 89 Cal.App.4th 731, 745 (Cal. Ct. App. 2001). "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect."  Twaite v. Allstate Ins. Co., 216 Cal. App. 3d 239, 252 (1989).  A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint.  Id.

While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, see, e.g., James River Ins. Co. v. DCMI, Inc., C 11-06345 WHA, 2012 WL 2873763 at *3 (N.D. Cal. July 12, 2012), the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached.  See id.[6]  Here, the Court cannot

---

[6] "Although the cross-claim does not specifically describe the duties of the parties as to verifying the accuracy of each check-box response, the facts pleaded support a reasonable inference that DCMI hired Powers to fill out the forms *correctly,* as well as advise DCMI on the meanings of any key terms so that DCMI could verify and provide the proper responses in order to successfully obtain the valid insurance coverage it desired. The allegations describe a contractual arrangement by which DCMI paid Powers to facilitate procurement of insurance by filling out application forms and offering guidance as to the appropriate completion of those forms."  Id. (emphasis in original).

United States District Court
Northern District of California

1    perform this task because there is no way for the Court know even generally what the terms of the

2    contract or contracts were, or even how many agreements are at issue.  From the Complaint, it is

3    possible that Langan had at least six different contracts with USAA.  See Am. Compl., Exh. E at

4    p. 1.  To plead a claim for breach of contract, Plaintiff must at least allege the material terms of a

5    specific contract, state that he performed his own obligations under that contract or was excused

6    from performing them, and state which obligations a defendant allegedly breached.

7           Accordingly, Langan's Fifth Cause of Action is DISMISSED WITH LEAVE TO

8    AMEND.

9                    **5.        Breach of the Implied Covenant of Good Faith and Fair Dealing**

10          Langan alleges that all Defendants breached the implied covenant of good faith and fair

11   dealing ("the implied covenant") with respect to the contracts between Langan "and Defendants"

12   by "not providing services for which it and the class were paying for" and by "by engaging in the

13   conduct complained of herein." Am. Compl. ¶ 139.  Langan further avers that he suffered

14   economic damages as a result of this breach.  Id. ¶ 140.

15          The covenant of good faith and fair dealing is implied by law in every contract; its purpose

16   is to prevent a contracting party from unfairly frustrating another party's right to receive the

17   benefits of the contract.  See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349 (Cal. 2000).  "The

18   prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the

19   existence of a contractual relationship between the parties." Smith v. City & Cnty. of San

20   Francisco, 225 Cal. App. 3d 38, 49 (1990).  "To establish a breach of an implied covenant of good

21   faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along

22   with conduct that frustrates the other party's rights to benefit from the contract." Fortaleza v. PNC

23   Fin. Servs. Group, Inc., 642 F. Supp. 2d 1012, 1021–22 (N.D. Cal. 2009) (citations omitted).

24          The USAA Defendants and the Chase Defendants move to dismiss this claim on the

25   ground that Langan has failed to allege the contract that forms the basis of the claim or the conduct

26   that frustrated or interfered with the terms of that contract.

27          The court concludes that these motions are well-taken. The allegations in the complaint do

28

United States District Court
Northern District of California

1    not indicate the contract or contracts upon which this claim is predicated.  Indeed, the only fact

2    that Langan alleges with respect to the contracts at issue is that Defendants failed to provide

3    "services for which it and the class were paying for."  Given that many contracts are described in

4    the complaint, this allegation is insufficient to identify the contractual obligation or obligations at

5    issue.  Langan also does not allege with sufficient specificity the conduct that allegedly breached

6    the implied covenant.  Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND with

7    respect to the USAA Defendants and the Chase Defendants.

8          **6.       California Civil Code § 1671**

9          Langan alleges that all Defendants except for the Chase Defendants violated California

10   Civil Code section 1671 by imposing "unreasonable fees and collection penalties" as contractual

11   liquidated damages.  Am. Compl. ¶¶ 82-87.

12         Section 1671 provides, in pertinent part: "[A] provision in a contract liquidating the

13   damages for the breach of the contract is valid unless the party seeking to invalidate the provision

14   establishes that the provision was unreasonable under the circumstances existing at the time the

15   contract was made."  Cal. Civ. Code § 1671(b).  California courts define liquidated damages as

16   "an amount of compensation to be paid in the event of a breach of contract, the sum of which is

17   fixed and certain by agreement."  Chodos v. West Publ'g Co., 292 F.3d 992, 1002 (9th Cir. 2002).

18   Thus, to constitute liquidated damages, the contractual provision must: (1) arise from a breach,

19   and (2) provide a fixed and certain sum.  Id.  Whether a contractual provision is an unenforceable

20   liquidated damages provision is a question for the court.  Morris v. Redwood Empire Bancorp,

21   128 Cal. App. 4th 1305, 1314 (2005) (citation omitted).

22         The USAA Defendants move to dismiss this claim on the ground that Langan has not

23   alleged the terms of the contract containing the liquidated damages provision at issue or the terms

24   of the liquidated damages provision.

25         The court concludes that this motion is well-taken.  Many contracts are mentioned in the

26   complaint, but Langan does not specify in the complaint which of these contracts forms the basis

27   of his claim under § 1671.  Additionally, Langan does not specify the terms of the alleged

28

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    liquidated damages provision or allege the events that triggered such provision, much less explain

2    why application of the provision would be unreasonable.  Without this information, the operative

3    complaint fails to raise the reasonable inference that any fees that the USAA Defendants charged

4    Langan were unreasonable liquidated damages within the meaning of section 1671.  Accordingly,

5    this claim is DISMISSED WITH LEAVE TO AMEND as to the USAA Defendants.

6                    **7.        California's Rosenthal Fair Debt Collection Practices Act**

7          Langan alleges that all Defendants violated California's Rosenthal Fair Debt Collection

8    Practices Act ("RFDCPA") by attempting to collect a debt and by reporting the debt to a consumer

9    reporting agency despite having received written disputes from him with respect to the debt.  Am.

10   Compl. ¶¶ 90-105.

11         The RFDCPA requires all debt collectors attempting to collect a consumer debt to comply

12   with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692b through 1692j.  Cal.

13   Civ. Code § 1788.17.  As such, a plaintiff may state a claim for violation of the Rosenthal Act

14   simply by showing that a defendant violated any of several provisions of the FDCPA.  See

15   Crockett v. Rash Curtis & Assocs., 929 F. Supp. 2d 1030, 1033 (N.D. Cal. 2013).  A claim for

16   violations of the RFDCPA must be brought "within one year from the date of the occurrence of

17   the violation."  Cal. Civ. Code § 1788.30(f).

18         Langan appears to base his RFDCPA claim on violations of the FDCPA, specifically, 15

19   U.S.C. §§ 1692g and 1692e.  Section 1692g requires a debt collector to send a notice to the

20   consumer containing information about the debt within five days of the initial debt-collection

21   communication. See 15 U.S.C. § 1692g.  Section 1692e prohibits a debt collector from making

22   any false representation in connection with the collection of any debt.  See 15 USC § 1692e.

23         The USAA Defendants and the Chase Defendants move to dismiss this claim on the

24   ground that it is time-barred and that Langan fails to allege sufficient facts to state a claim.  The

25   Court concludes that USAA's motion must be denied, but the Chase Defendants' motion must be

26   granted.

27         As to USAA, Langan alleges that he notified it that he disputed the balance owing on his

28

accounts, but that USAA was reporting the erroneous balance to the credit agencies as recently at August 2013. As this case was filed in October 2013, Langan's claim against USAA is timely. USAA's motion on this claim is DENIED.

As to the Chase Defendants, however, the allegations are different. The last act alleged to have been taken by Chase Bank is the mailing of a Form 1099-C, which occurred on or about February 6, 2012. Am. Compl., Exh. L at p. 5. Plaintiff filed his Complaint on or about October 22, 2013, more than a year and eight months after he was on notice that Chase had issued the Form 1099-C. Therefore, because Plaintiff's claim is not brought within a year of his learning of the alleged violation, Plaintiff's RFDCPA claim is DISMISSED WITH LEAVE TO AMEND.

### 8.       California's Consumer Credit Reporting Agencies Act

Langan alleges that all Defendants violated California's Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code sections 1785.11, 1785.14(a), and 1785.25(a), by furnishing inaccurate information to a credit reporting agency after he sent them letters notifying them of a dispute.[7]

The USAA Defendants move to dismiss this claim on the ground that Langan has not alleged that they are consumer credit reporting agencies or that they furnished information that was incomplete or inaccurate. The Chase Defendants also move to dismiss this claim on the ground that Langan does not allege that they engaged in any credit reporting activity to any entity other than the IRS.

The court concludes that these motions are well-taken.

Sections 1785.11 and 1785.14(a) apply only to consumer credit reporting agencies ("CCRAs"). <u>See</u> Cal. Civ. Code § 1785.11 (requiring CCRAs to furnish a consumer a credit report under certain circumstances); Cal. Civ. Code § 1785.14(a) (requiring CCRAs to maintain procedures to prevent the dissemination of consumer information to unauthorized entities). A "consumer credit reporting agency" is "any person who, for monetary fees, dues, or on a

---

[7] Langan also mentions section 1785.31 in the operative complaint. That section lists the remedies available to plaintiff who prevails on a claim under the CCRAA. <u>See</u> Cal. Civ. Code § 1785.31.

United States District Court
Northern District of California

cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties[.]" Cal. Civ. Code § 1785.3(d).  Langan alleges that the USAA Defendants issued to him several credit accounts and that the Chase Defendants held "debt" associated with Langan.  Am. Comp. ¶¶ 8-10.  Because these Defendants are not alleged to have engaged in credit reporting activities within the scope of section 1785.3(d), Langan's claims under sections 1785.11 and 1785.14(a) are DISMISSED WITH LEAVE TO AMEND as to the USAA Defendants and the Chase Defendants.

Langan's claim under section 1785.25(a) also fails.  That section provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

Langan's allegations with respect to the Chase Defendants are limited to the notion that they improperly filed a form with the IRS.  Because the complaint is devoid of any allegations showing that these Defendants furnished information to a CCRA, this claim is DISMISSED WITH LEAVE TO AMEND.

Likewise, Langan's allegations with respect to the USAA Defendants are limited to the theory that, after Langan notified them of his dispute of a debt, these Defendants "refused to remove the negative credit information on [his] credit report."  Am. Compl. ¶ 56.  Because these allegations do not raise the inference that the USAA Defendants furnished inaccurate information to a CCRA, this claim is DISMISSED WITH LEAVE TO AMEND as to these Defendants.

### 9.    Unfair Competition Law

Langan alleges that all Defendants violated all three prongs California's Unfair Competition Law, California Business and Professions Code section 17200, by "charging for a service not actually provided and advertising in a manner that is likely to deceive the public . . . into believing that the unlawful acts mentioned above were required[.]" Am. Compl. ¶ 151.  Langan seeks restitution of all economic benefits that Defendants obtained through these acts.

The USAA Defendants move to dismiss this claim on the grounds that Langan does not

United States District Court
Northern District of California

17

allege that he lost money as a result of any unfair competition, that he was charged for a service that was not actually provided to him, or that they advertised to the public in a manner likely to deceive the public.  The Chase Defendants also move to dismiss this claim on the ground that the complaint does not allege that they committed any unfair, unlawful, or fraudulent practice.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App.  4th 1544, 1554 (2007).

### a.  Unlawful Prong

An act is unlawful under the UCL if it violates another law.  "[V]irtually any state, federal or local law can serve as the predicate for an action under section 17200." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012) (citation omitted).

Langan alleges that his claim under the unlawful prong is based on violations of the RFDCPA, the FCRA, and the CCRAA.  Am. Compl. ¶ 153.  Because Langan's claims under the FCRA were dismissed with prejudice with respect to the USAA and Chase Defendants, Langan's claim under the unfair prong also is DISMISSED WITH PREJUDICE with respect to these Defendants to the extent it is premised on violations of the FCRA.  Because Langan's claims under the CCRAA as to the USAA and Chase Defendants were dismissed with leave to amend, Langan's claims under the unfair prong also are DISMISSED WITH LEAVE TO AMEND as to these defendants to the extent such claims are premised on violations of the CCRAA.  Because Langan's claims under the RFDCPA as to the Chase Defendants were dismissed with leave to amend, Langan's claims under the unfair prong also are DISMISSED WITH LEAVE TO AMEND as to these defendants to the extent such claims are premised on violations of the RFDCPA.  Langan may reassert these claims in any amended complaint if he is able to cure the deficiencies identified in this order with respect to his claims under the RFDCPA and the CCRAA.

Because the USAA Defendants' motion to dismiss as to Langan's claims under the

18

1    RFDCPA was denied, Langan's claims under the unfair prong may proceed as to the USAA

2    Defendants to the extent such claims are premised on violations of the RFDCPA.

### b.    Unfair Prong

4        "[T]he determination of whether a particular business practice is unfair necessarily

5    involves an examination of its impact on its alleged victim, balanced against the reasons,

6    justifications and motives of the alleged wrongdoing."  Berryman v. Merit Prop. Mgmt. ., Inc., 152

7    Cal. App. 4th 1544 (2007).  "The UCL does not define the term 'unfair' as used in Business and

8    Professions Code section 17200," Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1364

9    (2010), and "[t]he standard for determining what business acts or practices are 'unfair' in

10    consumer actions under the UCL is currently unsettled." Yanting Zhang v. Superior Court, 57

11    Cal.4th 364, 380 n.9 (2013).  In this circuit, in the consumer context, a practice may be deemed

12    unfair if either (1) it is tethered to specific constitutional, statutory, or regulatory provision, or (2)

13    its harm to consumers outweighs its utility. Lozano v. AT & T Wireless Servs. Inc., 504 F.3d 718,

14    736 (9th Cir. 2007).

15        The USAA and Chase Defendants' motion is well-taken as to this claim, as the complaint

16    does not identify the business practice at issue.  Indeed, Langan's only allegation in this regard is

17    that Defendants "charg[ed] for a service not actually provided and advertis[ed] in a manner that is

18    likely to deceive the public[.]"  Am. Compl. ¶ 151.  Without factual allegations indicating the

19    service for which consumers were charged, the nature of the charges, or the nature of the

20    advertisements at issue, the operative complaint does not raise the reasonable inference that the

21    USAA or Chase Defendants' acts harmed consumers within the meaning of the UCL.

22    Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND as to the USAA and Chase

23    Defendants.

### c.    Fraudulent Prong

25        A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's

26    conduct is "likely to deceive." Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000,

27    1012 (N.D. Cal. 2010) (citing Morgan v. AT & T Wireless Servs. Inc., 177 Cal. App. 4th 1235,

28

United States District Court
Northern District of California

1249 (2009)).  To state a claim for fraud under the UCL, a plaintiff must allege the existence of

(1) a duty to disclose, and (2) reliance.  Id.  Additionally, a claim for fraudulent conduct under the

UCL must meet the heightened pleading requirements of Rule 9(b).  See Kearns v. Ford Motor

Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

Langan's theory under the fraudulent prong is based on the same allegations that form the

basis of his claim under the unfair prong.  Because these allegations are insufficient to satisfy the

pleading requirements of Rule 8, they are necessarily insufficient to satisfy the pleading

requirements of Rule 9. Accordingly, this claim also is DISMISSED WITH LEAVE TO AMEND

as to the USAA and Chase Defendants.  If Langan chooses to reassert this claim in an amended

complaint, he must plead the claim with the specificity required by Rule 9.

### 10.      Fair Advertising Law

Langan alleges that all Defendants violated California's Fair Advertising Law ("FAL"),

California's Business and Professions Code section 17500, by using "various forms of advertising

media to advertise, call attention to or give publicity to the sale of their goods and services, and

other practices, as set forth above, which are not as advertised or as otherwise represented[.]"  Am.

Compl. ¶ 163.

The FAL makes it unlawful for any person or entity to disseminate any statement "which is

untrue or misleading, and which is known, or which by the exercise of reasonable care should be

known, to be untrue or misleading" in connection with the sale of "real or personal property" or

"services." Cal. Bus. & Prof. Code § 17500.  The FAL encompasses not just false statements, but

also those that "may be accurate on some level, but will nonetheless tend to mislead or deceive."

Ariz. Cartridge Remfrs. Ass'n, Inc. v. Lexmark Int'l, Inc., 421 F.3d 981, 985 (9th Cir. 2005).

Whether advertising is false or misleading under the FAL will be determined from the perspective

of the "reasonable consumer." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)

(citation omitted). "Under the reasonable consumer standard, [a plaintiff] must show that members

of the public are likely to be deceived [by the advertising]." Id. (citation and internal quotations

omitted). Because claims under the FAL are "grounded in fraud," they must satisfy the heightened

United States District Court
Northern District of California

1   pleading standards of Rule 9(b).  <u>Vess v. Ciba–Geigy Corp. USA</u>, 317 F.3d 1097, 1103–04 (9th

2   Cir. 2003).

3          The USAA and Chase Defendants move to dismiss this claim on the ground that Langan

4   has not alleged that any of them advertised to him.

5          Langan does not allege any facts pertaining to *any* advertisements.  As such, the operative

6   complaint does not raise the reasonable inference that the USAA and Chase Defendants advertised

7   in violation of the FAL.  Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND as

8   to the USAA and Chase Defendants.

9                    **11.      Intentional Misrepresentation**

10         Langan alleges that all Defendants made misrepresentations they "knew" to "to be false"

11   by "furnishing the information to the three CRAs which distributed that information to potential

12   creditors."  Am. Compl. ¶ 183-185.

13         The USAA Defendants move to dismiss this claim on the ground that it is preempted by

14   the FCRA because it pertains to their duties as furnishers of credit information.  The Chase

15   Defendants also move to dismiss this claim on the ground that Langan does not allege that they

16   made any misrepresentation.

17         "The FCRA establishes standards for the collection, communication and use of consumer

18   information for business purposes.  Through the FCRA, Congress has elected to establish a

19   scheme of uniform requirements regulating the use, collection and sharing of consumer credit

20   information.  In order to maintain this uniformity, Congress included express preemption clauses

21   in the FCRA relating to various aspects of consumer credit reporting.  One area Congress has

22   chosen to preempt is the regulation of furnishers of credit information. Specifically, the FCRA

23   provides as follows:

24                 No requirement or prohibition may be imposed under the laws of
                   any State with respect to any subject matter regulated under section
25                 1681s–2, relating to the responsibilities of persons who furnish
                   information to consumer reporting agencies, except that this
26                 paragraph shall not apply with respect to section 1785.25(a) of the
                   California Civil Code . . ."
27

28

United States District Court
Northern District of California

1   Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005) (quoting 15 U.S.C. §

2   1681t(b)(1)(F)(ii)).[8]

3          Thus, "[o]n its face, the FCRA precludes all state statutory or common law causes of

4   action that would impose any 'requirement or prohibition' on the furnishers of credit information."

5   Id.   In other words, state-law claims "based on alleged injury arising purely from the reporting of

6   credit information by a furnisher of credit . . . are completely preempted" by the FCRA, with the

7   exception of claims under California Civil Code section 1785.25(a).  Id.; see also Buraye v.

8   Equifax, 625 F. Supp. 2d 894, 899 (C.D. Cal. 2008) (the majority rule in the Ninth Circuit is that

9   § 1681t(b)(1)(F) totally preempts all state statutory and common law causes of action which fall

10  within the conduct proscribed under § 1681s-2).

11         Langan's claim for intentional misrepresentation is based on an injury arising out of the

12  USAA and Chase Defendants' alleged provision of credit information to CRAs, which is act

13  regulated by the FCRA.  As such, it is preempted by the FCRA and is therefore DISMISSED

14  WITH PREJUDICE with respect to the USAA and Chase Defendants.  See, e.g., Hasvold v. First

15  USA Bank, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002)("FCRA preempts plaintiff's claims [for

16  defamation and invasion of privacy] against the defendant relating to it as a furnisher of

17  information").

18                       **12.      Negligent Misrepresentation**

19         Langan alleges that all Defendants made representations with "no reasonable ground for

20  believing the representations to be true" and "with the intention to induce other potential creditors

21  NOT to supply credit to the Plaintiff and class[.]"  Am. Compl. ¶ 198.  Though Langan does not

22  specify the nature or target of the representations at issue, it appears the representations are those

23  that Defendants allegedly made to CRAs in connection with Langan's credit accounts.

24  _____

25  [8] Some courts have held that "causes of action predicated on acts that occurred before a furnisher

26  of information had notice of any inaccuracies are not preempted by § 1681t(b)(1)(F), but are
    instead governed by § 1681h(e)."  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1167

27  (9th Cir. 2009) (citation and internal quotation marks omitted).  This is not an issue here because
    Langan alleges throughout the complaint that the acts giving rise to all of his claims occurred after

28  he provided notice to Defendants of the alleged inaccuracies.

United States District Court
Northern District of California

1    The USAA and Chase Defendants move to dismiss this claim on the same grounds they

2    sought to dismiss Langan's claim for intentional misrepresentation.

3    Because this claim also is based on an injury arising out of the USAA and Chase

4    Defendants' provision of credit information to CRAs, it is preempted by the FCRA and is

5    therefore DISMISSED WITH PREJUDICE with respect to the USAA and Chase Defendants.

6    ### 13.    Defamation

7    Langan alleges that all Defendants defamed him by "furnishing of said above information

8    to Plaintiff's credit report" and with "the intention to induce other potential creditors NOT to

9    supply credit to the Plaintiff and class."  Am. Compl. ¶¶ 210, 214.

10   The USAA and Chase Defendants move to dismiss this claim on the same grounds they

11   sought to dismiss Langan's claim for intentional misrepresentation.

12   Because this claim also is based on an injury arising out of the USAA and Chase

13   Defendants' provision of credit information to CRAs, it is preempted by the FCRA and is

14   therefore DISMISSED WITH PREJUDICE with respect to the USAA and Chase Defendants.

15   ### 14.    Negligence

16   Langan alleges that the Chase Defendants were negligent in filing the 1099-C with the IRS

17   because he disputed the debt addressed in that filing.  Am. Compl. ¶¶ 25-40.

18   To state a claim for negligence under California law, a plaintiff must plead sufficient facts

19   to show "(1) duty; (2) breach; (3) causation; and (4) damages."  Ileto v. Glock Inc., 349 F.3d 1191,

20   1203 (9th Cir. 2003) (citation omitted).

21   The Chase Defendants move to dismiss this claim on the ground that Langan has not

22   alleged that they owe him any duty because the operative complaint does not show that their

23   relationship with Langan exceeded the scope of the typical borrower-creditor relationship.

24   The court concludes that this motion is well-taken.  "The existence of a duty of care owed

25   by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." Nymark v.

26   Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1095 (1991).  "[A]s a general rule, a

27   financial institution owes no duty of care to a borrower when the institution's involvement in the

28

loan transaction does not exceed the scope of its conventional role as a mere lender of money . . . Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." Id. at 1096 (citations and quotation marks omitted).  Whether a duty to use due care exists in a particular case is a question of law to be resolved by the court.  Aspiras v. Wells Fargo Bank, N.A., 219 Cal. App. 4th 948, 963 (2013).

Here, Langan has not alleged any facts to raise the reasonable inference that the Chase Defendants participated in his credit-related affairs "beyond the domain of the usual money lender."  Because Langan has failed to allege that the Chase Defendants owed him a duty, this claim is DISMISSED WITH LEAVE TO AMEND.

### 15.    Intentional Infliction of Emotional Distress

Langan alleges that all Defendants' "willful violations of the Credit CARD act, negligence and violations under the Cal. Bus. & Prof. Code § 17200 et seq." were "outrageous" and performed "for the purpose of causing [him] to suffer humiliation, mental anguish, and emotional and physical distress."  Am. Compl. ¶¶ 224-28.

"Under California law, the elements of intentional infliction of emotional distress ("IIED") are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct."  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (citation omitted). "In order to be considered outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation and internal quotation marks omitted). "Where reasonable persons may differ, the trier of fact is to determine whether the conduct has been sufficiently extreme and outrageous to result in liability." Id. (citation and internal quotation marks omitted).

The USAA and Chase Defendants move to dismiss this claim on the ground that Langan has failed to allege that their conduct was outrageous.

The court concludes that the operative complaint fails to raise the reasonable inference that the moving Defendants' conduct was "outrageous" under California law.  Langan's allegations on this issue are conclusory.  Moreover, the court has dismissed all of the claims upon which Langan's negligence claim is predicated on the ground that the allegations supporting those claims were insufficient.  See Am. Compl. ¶¶ 224-28 (alleging that IIED claim is based on "willful violations of the Credit CARD act, negligence and violations under the Cal. Bus. & Prof. Code § 17200 et seq.").  Accordingly, this claim is DISMISSED WITH LEAVE TO AMEND as to the USAA and Chase Defendants.

## IV.     MOTION TO STRIKE

The Chase Defendants move to strike the class allegations in the operative complaint on the ground that Langan cannot adequately represent the proposed class under Rule 23(a)(4) because he is proceeding pro per.  These Defendants note that Langan's allegation that he has "retained attorneys experienced in the prosecution of class actions, including complex cases and consumer actions" is false because no independent class counsel has appeared in the actin.  See Am. Compl. ¶ 22.

Courts in this district rarely grant motions to strike class allegations at the pleading stage on the ground that the claims at issue are not subject to certification under Rule 23.  See, e.g., In re Wal–Mart Stores, Inc. Wage and Hour Litigation, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (noting that "dismissal of class actions at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery'") (citation omitted); see also 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d.2005) (providing that the practice employed in the overwhelming majority of class actions is to address class certification issues only after an appropriate period of discovery).  Nevertheless, courts in this district sometimes strike class allegations with leave to amend when the face of the complaint shows conclusively that the proposed class cannot be certified.  See, e.g., Lyons v. Bank of Am., NA, Case No. 11-1232 CW, 2011 WL 6303390, at *6-7 (N.D. Cal. Dec. 16, 2011) (striking class

United States District Court
Northern District of California

allegations with leave to amend because allegations showed that the proposed class was not ascertainable).

The court concludes that the Chase Defendants' motion to strike is well-taken. Langan alleges in the complaint that he is "attending Law School" and that he does not expect to be admitted to the Bar. See Am. Compl. ¶ 72. In light of this allegation, and given the fact that Langan is representing himself in this action, Langan has not made a prima facie case that he would be an adequate class representative within the meaning of Rule 23(a)(4). *"Pro se* plaintiffs may not serve as counsel for a class." Newberg on Class Actions § 3:79 (5th ed.); see also Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) ("courts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity").

The determination of whether Langan would be an appropriate class representative is ripe for determination at this stage of the litigation because discovery on the class claims would not shed any additional light on the question of whether Langan can satisfy the requirements of Rule 23(a)(4). Accordingly, the class allegations are STRIKEN WITH LEAVE TO AMEND. Langan may reassert the class allegations in an amended complaint that complies with the other requirements set forth in this order, but only if he has secured the representation of experienced counsel and such counsel has entered an appearance in this action.

## V.    CONCLUSION

The court rules as follows:

All claims asserted against Verizon are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Verizon's motion to compel arbitration is therefore DENIED AS MOOT.

The Chase Defendants' motion to dismiss is GRANTED in its entirety.

The Chase Defendants' motion to strike the class allegations is GRANTED WITH LEAVE TO AMEND.

The USAA Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, as described above.

26

Langan may file an amended complaint that cures the deficiencies identified in this order within 30 days of the date this order is filed.  In any amended complaint, Langan:

1.  May not reassert any of the claims that the court has dismissed with prejudice.

2.  May not reassert any of the claims that he asserted against Verizon.  Langan may re-file these claims in state court.

3.  Must attribute specific allegations to each Defendant in connection with any claims that were dismissed with leave to amend.  To provide clarity, Langan shall refrain from using terms such as "Defendant" or "Defendants," and shall instead refer to each defendant by name.  If a claim was dismissed based on a failure to show that the claim was brought within the statute of limitations, Langan must indicate in any amended complaint the exact date of the event giving rise to that claim.

4.  May not reassert class allegations in the amended complaint unless Langan has secured experienced counsel and such counsel has appeared in this action.

A failure to comply with this order in any respect may result in the dismissal of this action with prejudice.

Langan is encouraged to seek the assistance of the Legal Help Center and to consult the following resources in prosecuting his claims: http://www.cand.uscourts.gov/proselitigants.

**IT IS SO ORDERED.**

Dated:  September 23, 2014

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California